THE NEXT MATTER, PLEASE. Good morning. Good morning, Your Honor. Do you wish to reserve some time? Four minutes, Your Honor. All right. Thank you. Let me begin by doing a little simple math. Well, maybe it's simple for you. It's a little complicated for me. $31,000. Now, that's the amount of the settlement here. The debtor, Ms. Chapman, has exemptions of $27,875. So we just rounded off $28,000. Now, out of that $31,000, the first people to be paid, as I understand the priority system, would be the trustee and the trustee's lawyer. So the trustee's lawyer and the trustee will no doubt charge much more than $3,000 in fees. So if the settlement goes forward, they will be paid first, and Ms. Chapman will then get less than what her exemptions were. So that gives her standing, not to mention the debts she owes to the IRS, and it also points out the sort of conflicting incentives here. Didn't the trustee say in his papers that she's being paid her full exemption? Is there any reason to believe that? I mean, if it's exempt, it's not an asset of the estate. How does the trustee pay himself from exempt assets? I don't recall him saying that one way or the other. My understanding is I thought the settlement funds were put into an account pending the resolution of this appeal, so I'm not sure any money has been paid out of the settlement funds, Your Honor. I assume once the appeal is over, depending on how it's resolved, the settlement funds will then be distributed, but I suspect that the trustee and the trustee's counsel will then make their claims, as they're allowed to, for their expenses and fees, and I am sure that will reduce the amount left in the settlement fund by either. How would that be, though, because as Judge Taylor indicated, exempt property is not property of the estate. Pardon? Exempt property is not property of the estate, so that is not available to pay Chapter 7 administrative expenses. I mean, she'll be paid. Yes. Nobody's objected to her exemption. Isn't that Law v. Siegel? Well, and, I mean, in various other. . . I mean, the commission isn't calculated on the exemption either by statute. So I don't think that that's the problem here. I think what we're saying is to the extent that was your opening, it's maybe time to go to argument number two. That I understand. Okay. Well, I only illustrate that issue just, you bring up the map, just to show, you know, the, as I say, the conflicting incentives here. The incentives go both to standing of Ms. Chapman and, of course, to the conflict of interest issue, which I think is the prime reason why this settlement should not go forward. The, you know, Ms. Chapman has an incentive to maximize the settlement for, you know, not only to make sure she recovers as much as she can personally, but also to make sure that the tax debts are paid to the extent they can be paid. I think that gives her standing. I'm not personally convinced that she doesn't have standing to be heard, but I also think the trustee who's a fiduciary has exactly that same incentive to maximize recovery. His compensation as a trustee is paid based on the amounts he distributes. The more money he brings in, the more money he sends out, the more money he makes. He's a fiduciary. He's obligated by statute to pay. So I don't, I see them as being on a par. I'm not sure if that's true. I understand that the, by statute, the trustee is fiduciary and is certainly obligated to maximize the recovery to the estate. I am not quite sure that's how it works. The trustee's incentive has another incentive, is if he tries to prosecute this case on an hourly basis, that will take up a large amount of time and a large amount of fees. And it will also hold up the case and probably hold up the case and delay any recovery he may get for his own fees out of any assets to the estate. So the trustee's incentive, and, as a matter of fact, the incentive of the trustee's lawyer is to get paid as quickly as possible. I think that's, you know, I understand the trustee's fiduciary duty, but we also have to consider litigation reality, is, you know, the trustee and a trustee's lawyer want to be paid quickly. I understand that. I like being paid quickly too. But that gives them an incentive that is contrary to Chapman's incentive, which is to litigate the adversary complaint for violation of the automatic stay and try to recover it. But by that argument, the trustee in any trustee's counsel is in conflict with every unsecure creditor as well. Because you want to get paid, you should just turn it because you're at the top of the line. I don't think that is going to bear a whole lot of weight. Well, then you have to explain, and we have to explain why a $31,000 settlement. That is not even a cost of defense settlement in a case like this. Defense costs in a case like this would probably be somewhere upwards of $60,000 to $70,000 from what I, you know, I've been involved in these cases, and I have a little understanding of how much they cost. Well, sure, it would cost the trustee a whole lot to litigate it. Yes. Give it. It would cost your client a whole lot, you know, to litigate it, and it would cost the other side a whole lot to litigate it. But I don't, you know, are you arguing that he didn't shake them down for enough money? I mean, is that, that's kind of the way that argument sounds to me. Essentially, yes. Well, that's honest at least. Yeah. I mean, aren't all settlement negotiations essentially that? No. No. I mean, the idea is you settle a case, and I don't mean to be flippant, but you settle a case to avoid a risk, and that's true on both sides. But you try to get as much as you can. Sure. But in doing a risk-weighted analysis, there's more factors simply than cost of litigation. One is do you have the net dollars to fund the cost going forward? Do you have access to contingent fee counsel? What is your likelihood of success? Do you have a witness who's credible who can get you beyond an early point in the case? What are the legal infirmities you have? And I just see a lot of problems with this case. It does not present. I think the judge saw the problems and laid them out. You have a very experienced. And just to be clear, this shows as a Judge Clarkson appeal, but it's really Judge Jury who's doing the analysis, correct? Right. Yes. Exactly. So, well, then you're blessing a settlement of case where the trustee's counsel essentially switches sides. And that, I think, outside the bankruptcy context, say, in a state court action or an action in the central district, that just would not be permitted. Well, and that's an interesting point. And I want to tease that out a little bit because you're up to the point of settlement. The trustee and Ms. Chapman are on the same side, are they not? Yes. So you've got to – Well, that's a little bit – in theory, yes. He holds – one of them has to own the action against the other people. And because of her bankruptcy, because she filed an 11, it came into the estate during the 11, he's got the right to proceed to prosecute it. But it's their joint, let's say, their joint interest in seeing it be pursued. So what was it that – it's not like her attorney went over and is representing the defendants, correct? No, it's not like that. Okay. So why is that side switching? It is because in the peculiar bankruptcy context, it puts the trustee's counsel, the debtor's former counsel, in a conflict. Because the debtor has – the debtor objects to the settlement. The debtor wants a larger settlement for good reasons. The trustee wants to settle the case for essentially economic reasons. And there's just a classic conflict of interest. It's not – it's – you're not the – But is it because who – Judge Taylor's point is who owns the claim and the estate owns the claim, your debtor has an interest in it,  So why is that a conflict in that you want more money? It's a conflict because the trustee's negotiation strategy and the trustee's knowledge of the case and the trustee's approach to settlement negotiations depends on information the trustee's lawyer acquired from the debtor. And the only way that's a problem is if he knows that her case is, to use a technical legal term, garbage. I mean, you know, if he knows things in that role, he's in conflict with her, potentially if he's telling the trustee, there's huge infirmities in this case, I know it because I represented her. I just don't see that that helps you in the overall risk-weighted analysis, which is what Judge Drury did. It's – I don't think a risk – you know, a risk – you know, a risk-benefit analysis applies to a stark conflict of interest under the rules. Well, I'm just talking about – put that aside. Okay. And let's say there is one, but she did a – you know, she did an analysis, and we're getting to 22 seconds, so I'm going to finish this and then let you think about it. She did an analysis that was sort of a classic A&C properties analysis, weighing the various risks and saying, in effect, I think this is within the realm of reason given what I know, and I don't see anything in that record that is an overt – let's say we take him out, would she reach a different conclusion? I think that the – before you get to the A&C analysis, you have to get past the conflict problem. That's – you know, the conflict problem, I think, makes the settlement void. But the trustee didn't have a conflict. The trustee's lawyer had a conflict. Right. Right. Take him out. Take him out. That's my point. That's a compensation issue. I think under at least California law, which is incorporated into this by the Tevis case and the local rules, it would say that when an attorney has a conflict and negotiates a settlement, that voids the settlement. I think the bland version – But I think it's a different – I'm going to let you sit. Do you still want to reserve your time? Yes. I feel badly we're taking your time, so let's stop it. That's fine. And let me just say – this won't come out of your time – I think those cases involve a slightly different situation where rather than an attorney with – here what we're really talking about is potentially a compensation issue, and did he use confidential information when his client – it's as though your client became incompetent and a trustee was appointed for her in that capacity, and he then used that information. They're on the same side of the equation. It's not as though he went to the other side and negotiated for them, or at least I don't see anything in this record. So that's the distinction. All right. Let's talk about that in a review. Let's do. So you've got a few extra seconds or minutes while I rambled on. Good morning, Your Honors. Jonathan, thank Wright, Finley, and Zack for appellees. The first issue here, of course, is standing. And the problem we have is that there's only standing in these cases if there is a surplus. Well, isn't there standing if – their theory of standing, which I kind of buy, is we have a pecuniary interest because they're non-dischargeable tax debts. So we are keenly interested in seeing recovery maximized to those creditors, and an enhanced settlement would do that. So isn't that enough of a hook to get them in the door? I don't believe so, Your Honors. I have not found a case where a creditor's claims being reduced would translate into a surplus for purposes of standing. But isn't that generally an offshoot of the surplus that is going for the debtor's benefit? And it's somewhat contextual in that that claim is high enough up the priority food chain that there may be a factual context where it would derive to the benefit. But that's not the test I've seen in the cases, Your Honor. The test I've seen is whether there is a net monetary recovery to the debtor. But that's the form rather than the substance because it is going for the debtor's ultimate benefit. And while it's not going directly to the debtor in this scenario, it does relieve her of non-dischargeable debt, giving her an indirect pecuniary benefit. Again, Your Honors, all I can say is I've not seen any case which has applied it in that way. And it would seem to me odd to say that, well, it's a surplus if the debtor is not actually getting the money. If you were to take that approach, all creditors who get a benefit. No, because I think Judge Taylor has hit the nail on the head. It's the pecuniary interest of the debtor. That is the test, not surplus is the application of that test in those situations. I understand, Your Honors. But I think the test is broadly stated as a pecuniary interest. And I think since she will exit bankruptcy encumbered by whatever the tax debt, you know, if we didn't have any non-dischargeable debt here, you're right. I also have to disagree with opposing counsel's characterization of the interest of the trustee and the trustee's counsel of settling cases as quickly as possible. My experience has been their interest is maximizing recovery. I've never seen a trustee say, wow, I can get rid of this one now for less and earn less for myself and the estate, therefore I'm going to do that and move on. Unless, of course, it's because there is such a significant risk factor in the case that the trustee is going to wind up with nothing. It is not uncommon, of course, for debtor's counsel in bankruptcy to wind up representing the trustee in settlement. Judge Jury noted that. Judge Jury did a thorough analysis and found there was no conflict here. Any problem as to a conflict was not as to U.S. Bank. U.S. Bank engaged in an arm's length good faith negotiation and as such reached a settlement which it paid. The problem of the alleged conflict, if there is one at all, is between the debtor and debtor's counsel, and there are remedies for that if they can prove there was a conflict. But there was no evidence of an... Sorry, Your Honor. No, go ahead. I was just saying, isn't that the point when I'm trying to distinguish his case law, the fact that they didn't switch sides and represent U.S. Bank? They stayed on the same side of the ledger. Exactly, Your Honor. And their remedy, again, is against the counsel if they find there's a problem, and the case they cite, Tevis, specifically said, okay, here we find there was a conflict or at least a potential conflict. We're going to send it back to look at this a little more. But the remedy is not invalidating the settlement. The remedy is we're not going to let the attorney get its fees. The attorney will not benefit from the conflict, but we're not throwing out the baby with the bathwater. The debtor was, of course, represented by independent counsel in fighting against the compromise, and they argued conflict. They did not show that there was an actual conflict. They made general arguments. There was no evidence of confidential knowledge that was used. There was no evidence of a bias other than the debtor wanted a different result than the trustee did. I have not found a single case in searching through Westlaw which has invalidated a settlement based upon a claim of conflict. The court also did a thorough analysis of the settlement, applying the AC factors, and in that thorough analysis determined the settlement was, in fact, good for the estate, about as good as the estate was likely to do here. The issue, of course, is the argument that there was a violation of the stay, and Judge Jury admitted that she had no authority for finding that seeking in-rem relief was a violation, was just her gut, if you will. Which was a well-developed gut. A well-developed gut, but not in this instance. In this instance, again, I've done a fairly thorough Westlaw search. No case has held that seeking in-rem relief constitutes a violation of the stay, and there's a reason for that. In-rem relief is different. In-rem relief can apply to bar people who are not a party to the bankruptcy. There was notice of the in-rem motion that was provided to the debtor, sent to the property address where she supposedly worked and owned the property. She had the ability to go in and seek to challenge that in-rem relief. She did not do so. Instead, she filed this adversary proceeding. If there are no other questions, Your Honor. No. Thank you, Your Honors. Thank you. Thank you. There actually is a case that avoids a settlement when there is a conflict of interest. It is not a bankruptcy case. It is a California Supreme Court case dealing with the rules of professional responsibility and it's called Blanton v. Woman Care, 38-3396. And what happened there is an attorney entered into a settlement without the client's consent, and the client then said the attorney had a conflict of interest, and the Supreme Court held that you cannot enter into a settlement without the client's consent, and therefore the settlement was void. Now, since the rules of professional responsibility in California are sort of incorporated into bankruptcy practice in the central district under the Tevas case and local rules, you know, I think that is the case perhaps opposing counsel searched for and didn't find. Well, that sounds, I mean, my thought is, well, of course you can't settle your client's case without their consent. So, but in this case, again, the client was the trustee, and the trustee by virtue of acquiring control of the claim was the person whose consent had to be obtained, correct? If the trustee was using someone other than a debtor's counsel, that would be correct. But the trustee was using a debtor's counsel, which at least in my experience is a bit unusual, and this could have been resolved quite simply with a conflict waiver. I don't know why one was not done, but be that as it may, it is a classic conflict situation. And you're going to say it's not a conflict is to basically say that their incentives are aligned in all situations. The incentives of the debtor and the incentives of the trustee are aligned in all situations, and that is good in theory, and certainly that is the ideal reflected in the statutes. But the reality we have here is different. There was a conflict. The debtor needed to get a greater recovery. The trustee had economic incentives to settle now rather than try to get a greater recovery. What was those economic incentives? $3,000 was really to be split pro rata by the professional estate was the economic incentive? No. First of all, it's probably not $3,000, Your Honor. That's just, you know, I suspect it's a lot more. The trustee's fees and the counsel's fees are a lot more. Right, but you're saying they settled this to get paid, suggesting that this is the source of that payment. So that's $3,000, if we are correct, and I think we think we are, that the exemption is going to go straight to your client. Okay. So that seems to actually cut against your argument that they were so greedy that they needed to split up $3,000. Rather, that kind of seems to indicate that they didn't really think that was that great of a case. Well, they're willing to say the case was worth less than $3,000. Is that the idea? Because, you know, I'm not sure that even – No, it's worth $31,000. It's just that $28,000 of that's going to your client. Right. But, again, you know, again, you could see the problem. We just can't assume, based on what happened, what's in the record, that there was no conflict. We can't make that assumption. We can say in an ideal world, you know, the trustee's interests and the debtor's interests are aligned, and typically that's true, I would hope. But this is not the ideal world. This is the case we have. And the trustee controls the attorney-client privilege, correct? Yes. The trustee controls the settlement, but – and the settlement would not have had this problem had the trustee used a different lawyer. So let me ask you a question. Yes. In a classic Chapter 7 situation where a debtor is injured pre-petition and has an automobile accident claim that then the trustee has the right to control and then hires debtor's lawyer to be the counsel for the trustee to settle the claim with the defendant and settles the claim for an amount that's substantially less than the plaintiff wants this claim to settle for, but the trustee believes is fair and reasonable and pays as much to the estate as he can get or she can get, doesn't that create the same situation that you're describing and happens in thousands of cases across the country every day? It does, Your Honor, and there's a simple solution to it, which I would do if I were the personal injury lawyer for the debtor. I would get a conflict waiver from my client before I entered it into representation. I'm not clear that that happens in every instance. Oh, no, Your Honor. I don't think it does. I'm just clear that it's a routine practice for the counsel for the debtor to actually work for the trustee because their interests are aligned. Now, ultimately it may not satisfy the debtor, but it's a practice that's constantly engaged in. Well, and we're getting to the end of our time, so I'm going to let you comment on this question. Okay. It is a problem, Your Honor, and I know that happens all the time. I think the simple solution to it is a conflict waiver. Otherwise, you're essentially giving some tacit approval to a violation of the rules of professional responsibility, and I don't think that has to be done. I think a conflict waiver takes care of the problem. That's what should have been done here, and I think Ms. Chapman probably would have given the waiver. Thank you. Thank you. All right, thank you.  This matter will be submitted. Thank you. Thank you, Your Honor.
judges: Taylor, Spraker, Gan